UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
PADUCAH DIVISION

UNITED STATES OF AMERICA

    v.                                    No. 5:18-cr-38-BJB

JOSHUA TRENZELL FOX

**\* \* \* \* \***

### OPINION & ORDER DENYING MOTION FOR SENTENCE REDUCTION

Joshua Fox pled guilty to nine counts of possession with the intent to distribute methamphetamine and received a sentence of 150 months' imprisonment. Indictment (DN 1) at 1–5; Judgment and Commitment Order (DN 46) at 1, 3.

Soon after his December 2019 sentencing, Fox moved for compassionate release, citing concerns about his susceptibility to complications from Covid. *See* Motion (DN 54) at 5. The sentencing judge—now no longer assigned to the case—denied the motion based on Fox's "high recidivism risk" and "history of violence," among other reasons. Order on First Motion (DN 62) at 5 (citing the sentencing factors set out in 18 U.S.C. § 3553(a)).

Fox has now filed a second motion for compassionate release. This time he points to his mother's multiple myeloma and chronic kidney disease as serious, progressive conditions that require ongoing care only he can provide. Motion (DN 84). To Fox's mind, this constitutes an extraordinary and compelling reason that justifies early release under 18 U.S.C. § 3582(c)(1)(A). He specifically invokes the family-circumstances provision of the Sentencing Commission's policy statement, U.S.S.G. § 1B1.13(b)(3)(C), which contemplates a potential sentence reduction for a defendant who is the only available caregiver for an incapacitated parent. *Id.* at 4. As an alternative, the motion seeks "supervised release with a condition of home confinement" so he "may care for his mother." *Id.* Fox also asks that the Court appoint a lawyer to represent him as he seeks compassionate release. Motion to Appoint Counsel (DN 87).

### I.

18 U.S.C. § 3582(c) permits federal inmates to request compassionate release or a reduction in sentence, but they must first "fully exhaus[t] all administrative rights" by asking their facility's warden to seek that relief on their behalf. *See United States v. Alam*, 960 F.3d 831, 832 (6th Cir. 2020) (quoting 18 U.S.C. § 3582(c)(1)(A)).

1

If the warden denies the request or fails to respond within 30 days of receiving the request, the inmate may petition the Court on his own behalf and seek release or a reduction in sentence. *Id.* at 833. The requirement to exhaust administrative remedies by first petitioning the warden functions as a mandatory claim-processing rule, one that the Government forfeits by failing to assert it. *Id.* at 833–34.

If exhaustion doesn't bar relief, a court applying Congress's compassionate-release scheme follows a "three-step inquiry" in considering § 3582(c) requests. *United States v. Elias*, 984 F.3d 516, 518 (6th Cir. 2021) (quotation marks omitted). First, "the court must find that extraordinary and compelling reasons warrant [a sentence] reduction." *Id.* Second, it must "ensure that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission." *Id.* Third, it must "consider all relevant sentencing factors listed in 18 U.S.C. § 3553(a)." *Id.*

The Sentencing Commission has issued a policy statement identifying several categories of reasons that it considers extraordinary and compelling. Of these, Fox invokes only the third provision of the family-circumstances category: "The incapacitation of the defendant's parent when the defendant would be the only available caregiver for the parent." U.S.S.G. § 1B1.13(b)(3)(C).

## II.

The record does not make entirely clear whether Fox has exhausted his administrative remedies. The motion includes an allegation that he had petitioned the warden of his facility, did not receive a response within 30 days, and only then filed his motion with this Court. Motion at 1. But Fox's motion does not include any evidence of such a request. The exhaustion requirement, however, is subject to forfeiture; it defeats a compassionate-release petition only if the Government objects on that basis. *See Alam*, 960 F.3d at 833. Here, the Government hasn't responded at all. Regardless, even setting aside exhaustion, Fox's motion would still fail.

### A. Family Circumstances of the Defendant

To justify release under § 1B1.13(b)(3)(C), Fox must show both that his mother is incapacitated and that he would be her only available caregiver.

Section 1B1.13(b)(3)(C) provides that "[t]he incapacitation of the defendant's parent" may warrant a sentence reduction "when the defendant would be the only available caregiver." But the policy statement does not define the term "incapacitation." To provide a definition, courts have looked to a variety of sources. *See United States v. Steele*, No. 1:20-cr-13, 2024 WL 1928945, at *3 (S.D. Ohio May 1, 2024) (collecting cases). Some have referred to a Bureau of Prisons program statement, which defines incapacitated as "completely disabled," such that one "cannot carry on any self-care and is totally confined to a bed or chair." *See United States v. Taveras*, 731 F. Supp. 3d 94, 98 (D. Mass. 2024) (citing BOP Program

Statement § 5050.502). As for dictionaries, a conventional definition of "incapacitated" is "deprived of capacity or natural power: made incapable of or unfit for normal functioning." MERRIAM-WEBSTER'S COLLEGIATE DICTIONARY (12th ed. 2026), at 811. A more stringent legal definition of "*permanent* incapacitation," meanwhile, covers "less than 100%" disability, albeit "with no possibility of improvement and no ability to live without assistance for the rest of the person's natural life." *See* PERMANENT INCAPACITATION, BLACK'S LAW DICTIONARY (12th ed. 2024).

Other district courts addressing this question in the compassionate-release context have drawn on examples of what incapacitation is—or more often, isn't. "Many if not all inmates have aging and sick parents," one court observed: "Such circumstances are not extraordinary." *United States v. Ingram*, No. 2:14-cr-40, 2019 WL 3162305, at *2 (S.D. Ohio July 16, 2019). Even "lifelong cancer," for example, has proved insufficient to establish incapacitation. *United States v. McDowell*, No. 5:10-cr-189, 2025 WL 278498, at *1 (N.D. Ohio Jan. 23, 2025). Suffice to say, a showing of "incapacitation" must exceed "a high bar" that is "compatible with the strict requirements for 'extraordinary and compelling circumstances.'" *Taveras*, 731 F. Supp. 3d at 99–100.

A medical record attached to Fox's motion shows that his mother suffers from Stage 4 chronic kidney disease as well as multiple myeloma—a form of bone cancer. Motion at 26. She is reportedly unable to care for herself and requires assistance with daily living. *Id.* at 3. According to a letter she wrote in support of the motion, she has trouble getting in and out of bed and believes that her illness burdens her family. Letter in Support (DN 85) at 1. Undoubtedly, chronic kidney disease and multiple myeloma amount to serious conditions requiring ongoing care.

Even assuming the mother's case amounts to "incapacitation," however, Fox still has not established that he is his only available caregiver. This is the second requirement under § 1B1.13(b)(3)(C). The Sixth Circuit has recognized that a defendant must show that neither other family members—including siblings—nor professional care facilities—such as nursing homes—are adequate and available. In *United States v. Shorter*, the defendant sought compassionate release to care for his mother, who had suffered a stroke and a brain injury. No. 24-3720, 2025 WL 2382928, at *1 (6th Cir. June 4, 2025). He contended that his sisters were unable to fully care for her and that a nursing facility had neglected her. *Id.* The Sixth Circuit affirmed the denial of relief: he hadn't shown the unavailability of a different facility *or* the inability of his sisters to help. *Id.* District courts in this circuit have similarly accounted for a defendant's adult siblings, finding that they cut against § 1B1.13(b)(3)(C) claims. *See United States v. Gallegos*, No. 5: 21-cv-123, 2024 WL 1180942, at *2 (E.D. Ky. Mar. 19, 2024). As described by the Eleventh Circuit, § 1B1.13(b)(3)(C) serves as a "policy of last resort: it authorizes a sentence reduction

3

only when no other realistic caregiving option exists." *United States v. Robelo-Galo*, 166 F.4th 1311, 1316 (11th Cir. 2026).

The facts here are analogous to those in *Shorter*. Like that defendant, Fox has not shown that professional care facilities would be inadequate to meet his mother's needs. And, as in *Shorter*, Fox has siblings who are allegedly "unable to provide full-time care due to their obligations." Motion at 3. His mother's letter similarly acknowledges the involvement of her other children, but without explaining what their competing obligations are or why they prevent caregiving. DN 85 at 1. But at least on this record, what prevents Fox's (apparently unincarcerated) siblings from serving as caregivers remains unclear. Fox has provided no documentation of his siblings' circumstances: no affidavits, no explanation of what obligations prevent them from providing care, and no account of whether any sibling could provide even partial assistance. Courts in this circuit have denied relief even on more developed records. *See Steele*, 2024 WL 1928945, at *3 (that sibling lived out of state didn't foreclose caregiving); *McDowell*, 2025 WL 278498, at *2 (that relatives had drug and theft issues didn't foreclose caregiving). If those showings are insufficient, Fox's undeveloped assertion that his siblings have unspecified obligations falls shorter still.

Because Fox has provided scant evidence of his siblings' conflicting obligations, he does not satisfy § 1B1.13(b)'s family-circumstances provision. And he has not otherwise established an extraordinary and compelling reason justifying compassionate release.

### B.  18 U.S.C. § 3553(a) Factors

Regardless, Fox's motion would still fail based on the factors set forth in 18 U.S.C. § 3553(a). Among other things, these include the nature and circumstances of the defendant's offense, the history and characteristics of the defendant, and the need to provide the defendant with rehabilitation.

Commendably, Fox has maintained continuous employment throughout his incarceration, completed nine rehabilitation programs, and kept a clean disciplinary record across more than seven years in federal custody. Motion at 2, 20. This record reflects significant effort toward rehabilitation and successful reentry into the community.

But other characteristics of Fox's history cut against his request for early release. His criminal record dates back to 2006 and includes cocaine trafficking and assault. First Motion at 5. And although Fox's recidivism "risk score" apparently improved from high to medium, Motion at 20, other courts in this circuit have treated medium scores as cutting against the defendant in a motion for compassionate release. *See, e.g., United States v. Burlingame*, 586 F. Supp. 3d 705, 711 (E.D. Mich. 2021). Fox argues that he has completed all available programs and that his score

4

would be lower had the Bureau of Prisons made all required programming available to him.  Motion at 2.  That may or may not be true—the Government has not been invited to respond—but the Court needn't decide the question here.  The Sixth Circuit has made clear that a low Male Prisoner Assessment Tool Targeting Estimated Risk and Need ("PATTERN") score alone is insufficient to establish that a defendant poses a low risk of reoffending.  *See United States v. Bass*, 17 F.4th 629, 640 (6th Cir. 2021) (cautioning that PATTERN scores have significant limitations and cannot be accepted in isolation).  Courts must also consider the nature and severity of the defendant's criminal conduct and history, as well as whether his violent acts were isolated incidents or sustained patterns of conduct.  *Id.*

Considered together, therefore, the § 3553(a) factors do not support a sentence reduction.  Despite his rehabilitation efforts, Fox's two-decade criminal history and serious offenses counsel against early release—just as they did the first time he sought compassionate release.  His recidivism risk has certainly improved since then, but remains an imperfect score on an imperfect scale.  *See Bass*, 17 F.4th at 640.

Because no extraordinary and compelling reasons warrant compassionate release, Fox's alternative request for supervised release with a condition of home confinement fails as well.  That alteration of his sentence, though less significant than supervised release without home confinement, would still require Fox to satisfy all three compassionate-release prerequisites.  *See United States v. Gills*, No. 12-20287, 2021 WL 6112153, at *1 n.1 (E.D. Mich. Dec. 27, 2021) (recognizing that courts may convert a remaining sentence to supervised release with home detention only upon granting compassionate release); *United States v. Williams*, 458 F. Supp. 3d 939, 944 (W.D. Tenn. 2020) (absent compassionate release, a district court lacks "authority under 18 U.S.C. § 3582(c)(1)(A) to place a prisoner in home confinement"); *United States v. Marshall*, No. 5:18-cr-122, 2020 WL 7488195, at *2 (E.D. Ky. Dec. 21, 2020) (similar) (citing 18 U.S.C. § 3621(b), which would otherwise commit defendant's place of custody to the unreviewable discretion of Bureau of Prisons).

### III.

Fox also requests appointment of counsel to aid his pursuit of this relief.  Motion to Appoint Counsel at 1.  But "there is generally no right to counsel in postconviction proceedings." *United States v. Augustin*, 16 F.4th 227, 233 (6th Cir. 2021) (quotation marks omitted).  And, more specifically, "there is no constitutional (or statutory) right to appointed counsel in § 3582(c) proceedings." *United States v. Manso-Zamora*, 991 F.3d 694, 696 (6th Cir. 2021).  Only "exceptional circumstances" warrant the appointment of counsel in such proceedings. *United States v. Pratt*, No. 21-6013, 2022 WL 1294435, at *3 (6th Cir. Mar. 15, 2022) (citing *Lavado v. Keohane*, 992 F.2d 601, 605–06 (6th Cir. 1993)).

Fox hasn't pointed to any such "exceptional circumstances" that would justify appointment here. Despite his apparent lack of representation or legal training, Fox has clearly and impressively conveyed his arguments so the Court can both understand them and why he advanced them. But his clarity likewise goes to show that no "exceptional circumstances" justify appointment of counsel to further amplify those arguments here. The Court therefore denies his request for appointment of counsel.

### ORDER

The Court denies Fox's motion for a sentence reduction and appointment of counsel (DNs 84 & 87). This case remains closed.